Delinquency Act was designed to prevent the consequences of youthful indiscretions to be visited upon delinquents when they reached adulthood. Under SORNA and under the condition in which youthful indiscretions are to be visited upon delinquents when they reach adulthood, youthful indiscretions are to be visited upon delinquents when they reach adulthood. imposed as a condition of supervised release for SE's violation of his juvenile supervision. The Adam Walsh Act and its registration requirements literally does away with decades of that confidentiality and that protection that has been visited upon juveniles as a result of the Federal Juvenile Delinquency Act. In the Adam Walsh Act sex offender registration requirements, Congress has disavowed that historical commitment by rendering the juvenile in this case, and all juveniles, liable to registration and criminal sanctions. Now, the juvenile must place his name and his address on a public sex offender list, bringing with it the ostracism, disrespect, mistrust, and even the hatred of his community. This particularly affects my clients, Your Honors, because this is a Native American youth, and in his community, as a force to register under SORNA, he is going to come under a type of disrepute that was never visited on him before. I'm sympathetic, as a practical matter, to where your client would end up. And the difficulty I have is trying to figure out if it's punitive or not. So the first thing that occurs to me is the argument you're making about shame and community ostracism, et cetera. But we have Ninth Circuit case law that basically says that that kind of disrespect, disrespect, and burden isn't punitive or isn't punishment. Well, Judge, here's the problem that I have with that. And it is punitive because in those cases where registration is required for criminals, it's not punitive because it's just something that is procedural. You've been convicted of this crime. Now you've got to register. And you've got to register until such time as you can prove, in some cases 25 years, that you no longer present a threat to the community as a sex offender. Now, the problem is that juvenile, S.E., has not been convicted of anything. He's been adjudicated a delinquent. Now, the statute, SORNA, seeks to change that juvenile adjudication to a conviction. Anything that happens now in the juvenile court for an individual under the age of 14 or over the age of 14 is now a conviction rather than a juvenile adjudication. That's punishment. That changes what is rehabilitative in nature under the FJDA to now a criminal conviction by the stroke of a pen. By the stroke of a pen, they have changed that rehabilitative nature of the FJDA to a conviction. So it is punitive. It's punishment because, and I'm looking here at Smith v. Is it a conviction for purposes other than for this reporting requirement? No, Your Honor. It's a conviction for this reporting requirement. So it wouldn't be fair to say that it's a conviction in a judicial sense. I beg your pardon, Your Honor. It's a conviction so that it falls within the ambit of the reporting requirement, but it doesn't stand as a conviction for any other purposes. And that's exactly my point. That's exactly the point why this particular statute, SORNA, is punitive in nature because it is so narrow that it only applies to this individual who has been adjudicated what would have been a criminal conviction for an adult, but he was adjudicated as a juvenile. And now they're saying, well, for this particular purpose, so that you register, now you have this conviction. So why is that punitive if the registration itself, I mean, I guess it's this sort of thing. If something is rehabilitative in nature, does the fact that you take that away turn it into punitive? Kind of one of these almost philosophical questions. And I recognize the practical consequences, but I'm not sure if solely because it's rehabilitative in terms of the privacy, and it's not 100 percent, as we know, because there are exceptions already. Absolutely. But is the fact that it's rehabilitative, and now I say, but now I'm going to change that and take it away, why does that turn it into punitive? Well, Judge, the whole purpose of the Act, as I said, was rehabilitative. And I think that we all can agree on that. And certainly that's been the case law of this circuit for nigh on to 30 years. Now, to make that a crime, to make it a criminal conviction, takes away that protection that the juvenile enjoyed, that his identity would remain secret, that his name would remain secret, that everything that occurred in that courtroom would remain secret, except under those very limited circumstances that are spelled out in the Federal Juvenile Delinquency Act. So how does that go against his rehabilitation? Well, the Court has already indicated. You've already indicated in your question, I understand your practical problem. I understand the practical impact. It is that practical impact which is punitive. It is that practical impact which this juvenile would have enjoyed had the SORNA not been in existence, he would have enjoyed the secrecy that comes with the Federal Juvenile Delinquency Act adjudication. Now, to make it a criminal conviction and to force his registration, it strips away that one aspect of rehabilitation, and that is we put on the shelf what you did as a juvenile. As long as you can stay clean, what we do is we put that on the shelf and let you start adulthood anew with the opportunity of a clean slate. Well, this juvenile and the juveniles that follow him will not have the opportunity of a clean slate. They will have the stigma of a sex offender violation or strike that, a registration requirement, and they will have under SORNA this, quote, unquote, conviction of a sex offense, one that their neighbors, friends, employers, everyone will have knowledge of because of the public nature of the registration list and the purpose of the registration list, which is to publish to the community that there's a sex offender among you. Well, we've got two different issues, really. It can either be the purpose or the effect. Right, sir. I think Judge McKeon's question is, is the effect of this publication punitive? Does it have a punitive effect on the individual? Well, Your Honor, the court must examine whether the statute, to see if it's punitive on its face. Now, I've argued in my reply brief that it is punitive on its face because it has all of these penalty provisions that are attendant to it. And, frankly, that's the weakest of my arguments in the reply. I think, as the court has focused under Smith v. Doe, the court then looks to the effect and the purpose. Now, given Congress it's due, that they have a good purpose in that the community should be advised of who these sex offenders are, then we have to look at the effect. So I'm conceding that the purpose is probably valid. But when it applies to juveniles, you've got to look at the effect. As Judge McKeon said, what's the practical impact on this juvenile and all the other juveniles that will follow him? Now he's convicted of a sex offense according to this statute, whereas before he was not. So when it comes to juveniles, the effect on this juvenile and other juveniles is far greater than it is on an adult criminal. On an adult criminal, one who has accepted responsibility for what he did or found guilty by a jury or a judge of what he did. Well, as the Supreme Court said in the previous case, the Alaska case. Smith v. Doe, you are correct. In that case, they said for an adult, all anybody has to do is go down the public records and determine that the adult is a sex offender. That's right. The juvenile, you can't do that. And then the question is, is that public knowledge? Does it result in punitive consequences? Whatever that means. Is the fact that the juvenile is now publicly disclosed as a sex offender to the community, which he wasn't before. Does that have the effects that you can classify as punitive? Your Honor, most respectfully, it does. Okay. Respectfully or not, it does. It does. Yes. I mean, I admit. Why? I'm sorry, Your Honor. Why? Why does it? What are the practical consequences? The practical consequences for a juvenile are that his identity is revealed. The act itself is revealed. He falls within the dispute in his community. And it flies, as I said, in the face of years of case law and statutory protections that he had until SORNA came into existence. I wonder about the, if you go back to the Washington case where they were looking at the Washington sex offender case, Russell v. Brett, and they found that the word punitive was essentially rejected in there, other than your last point, which is that historically he kept these records confidential. So how does your argument square with what I think we're bound by, and that's the Russell v. Brett law line of analysis? It's because of this unique way that the Federal Government has, for the last 30 years, treated juveniles. And that is that juveniles are different. And even if you go all the way back to Henry Gault, I mean, the Supreme Court realized that juveniles are different. We're going to give them this special procedure. We're going to guarantee them due process rights. But under this special procedure, what they're going to give up is they're going to give up a jury trial. They're not going to have a jury trial. They're going to still have proof beyond a reasonable doubt, but it's not going to be in front of a jury. So that's one of the things that the juvenile gives up. He gives up the right to have a jury trial. He gives up the right to a public trial. None of these trials are public. As a matter of fact, this revocation proceeding was sealed, as all revocation proceedings are sealed. This docket is sealed. We refer to my client as S.E. because of that traditional secrecy that we've always granted to juveniles. Now, so the juvenile gives up these very important constitutional rights of public trial and jury trial. In return, he gets the secrecy. He gets that protection. He gets that rehabilitative focus rather than the punitive focus of the system. Now, the Congress has come and said, but in these types of cases, Mr. Juvenile, you've been convicted of a crime. You've been convicted of a crime of a sex offense, and you must register in your community and in your state. And if you don't, you're subject to stiff. When you get down to the only difference is that the conviction is no longer confidential. Right. Yes, sir. That's the only difference. Otherwise, you know, I think the Supreme Court's case on the adult registration would control it because there, you know, you have all these other adverse consequences of registration and so forth. Now, so your case has to be that the mere fact of public publicity is punitive. That's all it amounts to, isn't it? That's the whole, that's the whole ball of wax. Because otherwise, it's exactly the same as the adult. And the adult, we know, is OK because the Supreme Court told us it was OK. Right. So as far as I can tell, the difference is that, well, now, you know, Juvenile will have his adjudication treated as a conviction and make public. Well, that is. So you're you're that in itself is punitive. Well, Judge Kishima, that's exactly my point. That what the Congress has done is it made something that was an adjudication. It's now a conviction. So I'm not saying that he was originally convicted. It's not a conviction. It's treated as a conviction for the registration purposes. That's right. That's exactly right. It's treated as a conviction for registration purposes. Before, it was not treated as a conviction. He had. Oh, but it's not otherwise a conviction. In other words, you know, he's not sent to an adult prison. No. And does he have, if he gets a question, have you ever been convicted of a crime? He'd answer the same answer to that as he would have before this Act. He could certainly answer it, except if it's in the context of sex offender registration. Why? Because if it's a sex offender registration, he has to say I was adjudicated in violation of 2241, an aggravated sex offense, if it has to do with sex offender violation. But if he goes to an employer, of course he would not. No, no, no. That wasn't my question. No, her question was. He goes to an employer and they have that box. Yeah. And it says, you know, have you ever been convicted of a crime? Can I say, if I'm Mr. and Mrs. Essie, can I say no? Sure. Okay. But then your employer can get on the sex offender registration list and say, wait a minute, you just lied to me. He says, no, I didn't lie to you. I haven't been convicted. Well, this says you were convicted. So now the employer is going to fire him because you lied to me on the list when he really didn't because of this philosophical, this legal Chinese wall we're putting up. It's not really a Chinese wall anymore. He's been convicted. And the community knows he's been convicted. And that does make a difference. Your Honor, you're right. Although I may disagree with Smiths v. Doe, it is the law. But it applies to adults. And it applies to adults because adults enjoy certain constitutional protections, the right to a jury trial and the right to a public trial, that Essie and other juveniles did not enjoy when they were adjudicated as juvenile delinquents. And they gave up those rights so that they would have that confidentiality protection. And without that, then I think the whole system is called into question with regard to the rehabilitative nature of the federal juvenile. This is principally, at least, an ex post facto argument. Yes, sir. Absolutely it is. Yes. So whether or not they could do this to juveniles, those acts occurred after the passage of the Act. The question is, is changing the system for juveniles from a system where they're protected against public disclosure of that they committed an offense, is that essentially, is that consequence that they're suddenly publicly identified as criminals? Does that constitute punishment? Yes. And I don't want to get lost in my own hyperbole here. We have to realize that as far as Essie is concerned. Do you want to save two minutes? I do, Your Honor. Maybe I should do that and then talk about my hyperbole. Good morning, Your Honors. Rick Hosler for the United States. I have three main issues that I would like to talk about. They all kind of go in and out of this ex post facto. But the first is that SORNA clearly applies to the defendant just on the face of the statute. He was over 14, committed the crime of aggravated sexual abuse as defined by 2241. So he's required to register. That's not contested, is it? No, it's not, Your Honor. But I wanted to point out that it's not on accident. If you note in the intent of the statute, one of the reasons why SORNA was created was because of a gal named Amy Zila, who was an 8-year-old who was sexually abused by a 15-year-old. This isn't an issue, as Judge Cusim has said. I'm sorry, Your Honor. That's not an issue, as Judge Cusim has said. Well, I think, Your Honor, that what Mr. Gallagher is arguing as ex post facto, that this aspect of punishment is, in many ways, the argument should be whether or not SORNA and the Federal Juvenile Delinquency Act actually conflict with one another. And the United States' position is that they do not. Mr. Gallagher, the defense argument hinges in large part upon whether or not this counts as a... Well, they conflict in the confidentiality requirement. I would... Okay. I would disagree with that, Your Honor. And I think that there's a case that's actually cited by the defense in their reply brief, the Third Circuit case of United States v. A.D., that lays out a very good framework in how to analyze 5038 of the Federal Juvenile Delinquency Act. Mr. Gallagher has argued that there's this essentially ironclad confidentiality with certain exceptions. But that's not at all what the statute reads. If you look at 5038, which deals with the release of juvenile records, what 5038 first says is that the district court is responsible for safeguarding the information from unauthorized persons. And then it goes down and it lists not exceptions. It lists mandatory disclosures. In certain circumstances, increased law enforcement from other courts, pre-sentence reports, in those circumstances, the district court has no discretion. They must disclose the information. And that's the 1 through 6 under 5038. They shall release the records in those circumstances. Mandatory to disclose that information, not an exception. The paragraph right immediately following that talks about situations where you absolutely cannot release the records. And what that says is that it's an issue related to employment, to bonding, to licensing. In those circumstances, you cannot release the records. And as the Third Circuit pointed out, that second paragraph would be complete excess verbiage if 1 through 6 were the only exceptions where the records could be released. So the point here being that there is not an ironclad confidentiality. The first paragraph would also be excess verbiage if it could be released in all circumstances other than the ones where they say it can't be released. Well, Your Honor, it's saying that in those circumstances, it's mandatory that it must be released. And in other circumstances, it's optional? Somebody can call the court and say, my daughter is about to marry this man. I'd like to know whether he's a sex offender. Is that the district court has the option to say yes? Well, Your Honor, I would, in that particular circumstance, I would say that it wouldn't survive a balancing test. But the courts have clearly said that the district court has the ability, has some discretion as to whether, for example, to open the proceedings to the public, which is what A.D. dealt with. In United States v. Chacon, the issue was whether some of the record had to be given over to an adult defendant in an adult case to be used as a cross-examination material against a juvenile. And in this particular case, Congress has said that in certain circumstances, 14 years old or older that commits aggravated sexual abuse, authorized persons include the public. And they include the jurisdiction in which he resides, goes to school, works, and is convicted. And that's what the Federal Juvenile Delinquency Act says. I think it's also important to note, and going back, I'd like to rewind for just a moment. The defense has argued that this is a conviction, it's a conviction, it's a conviction. It's not a conviction. What that says in the paragraph that defines particular adjudications as falling under the phrase convicted, that's just a shorthand. It's so that when Congress writes this legislation, they don't have to say, and persons convicted of a sex offense and all 14-year-old or older juveniles who have been adjudicated delinquent for aggravated sexual abuse as defined by 18 United States Code 2241, because that's a lot of writing to include within the statute. So they have fixed within the word convicted the definition to include the juvenile adjudication in very limited and restricted settings, a very restricted fact scenario. Do you agree that this wouldn't be a conviction for purposes of asking whether somebody has been convicted? I completely agree, Your Honor. This is not a conviction in any respect. It's a juvenile delinquent adjudication. If you go, if the juvenile goes to apply for a job and asks if he's been convicted or she's been convicted, the answer is no. If a juvenile wants to vote when they hit 18 years old. It's kind of like, you know, Facebook or something. I mean, the employer goes on there and they see what you do, and now they can go to the public record and find out that in effect, whether you call it a conviction or an adjudication, that the juvenile has been convicted or not. I mean, it's basically now what used to be private is now public. They haven't been convicted, Your Honor. I would agree with that. Yes, they can go online, because Congress has said that there are certain dangerous sex offenders, and in this case, including certain juveniles, that we want the public to know where they are. And so not only for employment purposes, but if somebody wants to walk their kid to the daycare, they should be able to look online and determine where the sex offenders live in their neighborhood. Well, it's one thing kind of going forward, but the real question is going backward. For those who have been adjudicated under the statute where the general principle is that it's not going to be public. Isn't that the overriding view? I think the general principle was that we were going to keep this sealed for the most part. But there's nothing in the statute itself that requires that. That's kind of practice of the district courts. And as noted in the AD case and in other cases, there's some language in 5032 of the Federal Juvenile Delinquency Act that talks about where the district court can hold the proceeding. And the exact language is they can hold it in chambers. I shouldn't say the exact. To paraphrase the language, they can hold it in chambers or otherwise. And courts of appeal have determined that that means that in some circumstances, the district court can have open proceedings. So is it your view that under the current statute, if I'm the director of a daycare, and I think that this person who's moved in across the street from the daycare is a sex offender, but, of course, and I go to the records and I can't find that out. I can't seem to find his name. But I know for whatever reason, because I know he went to trial, I know he was the neighbor of so-and-so, that that person, the daycare director, could, under the current statute, go to the district court and say, we want an exception, we want to find out if he's a sex offender, because I'm concerned about my children and my daycare. Could you do that under the current law? I don't believe so. And I believe that that's because the way that the language has been read is that there's a balancing test of sorts that the district court would go through, depending upon the interests. And our argument is that Congress did that balancing test when they created the federal juvenile, excuse me, the Sex Offender Registration Notification Act. They did that balancing test themselves. And they said that in certain circumstances, there are juveniles who have been adjudicated for offenses and the public needs to know about them. And that's why I went back at the beginning, which is not an issue, but the Amy Ziala matter, that's specifically placed within the intent of the SORNA statute as one of the reasons for the creation of the statute and why it's important that the public know that these types of offenders are in their community. I think it's important here, the defense argument hinges entirely upon policy and intent. And if the defense were to win. No, it doesn't. The argument that they have is that the effect on the individuals is punitive. Not that that was the intent of Congress. Intent could be an argument. That's one of the two possible arguments. But whatever the intent was, if there's a punitive effect as a result of the release of this information that could previously not have been released, then the question is, is that punitive? Well, Your Honor, what I meant by that is not the intent of Congress with SORNA, but the argument that it's punitive is based upon the defense's assertion that the policy of the Federal Juvenile Delinquency Act was that all things related to, with certain exceptions, related to juvenile proceedings was supposed to be confidential. And our argument is that that's just simply not the case. There have always been exceptions. There's always been flexibility for the district court. And those exceptions are not exceptions. They're mandates. And the only place for the district court.  And by and large, it is true, right? In the great bulk of juvenile cases, that they're confidential. In Federal proceedings or overall, Your Honor? Both. It is true that most of them are confidential. But there are some states that don't have seal requirements. There's nothing in the Federal Juvenile Delinquency Act that requires the case, the proceedings to be closed or the record to be under seal. That's just the practice that people have followed. But it's not punitive. And the fact that this is a juvenile case versus an adult case. All right. Tell me why it's not punitive to, you know, to this court. Assuming, you know, it's ordinarily treated as confidential, why isn't it punitive to now make it public? Well, Your Honor, we think that the Smith v. Doe case addressed this issue directly. And they said that the system does not treat the dissemination of truthful information and furtherance of a legitimate government objective as punishment. And the fact that this is a juvenile proceeding versus an adult proceeding does not in any way change that analysis. SORNA is simply a regulatory, civil, non-punitive scheme. And as it talks about in the kind of historical analysis section of the Smith v. Doe case, the punishment's talking about even branding, whipping, pillory, and it discusses those, banishment. Those things were punishment. This is not. This is just a truthful dissemination of information. The only difference is that before, unless there was some sort of balancing test conducted by the district court that determined that perhaps, say, the media had a First Amendment right to get in there, and because of that balancing the court wanted to have an open proceeding, before it would normally be closed. The fact that this person is now a sex offender in public knowledge doesn't transform what is a non-punitive regulatory civil statute all of a sudden into punishment. It's just, again, a dissemination of truthful information. The other part that's discussed in Smith v. Doe, because oftentimes there's a stigma and he's been branded, there's a scarlet letter, these types of things, and Smith v. Doe says that if that's kind of an incidental effect, that's not really what's taking place here. Historically, when you're talking about branding, when you're talking about making a march in the town square with a sign, these types of things, that created a direct one-on-one confrontation with the public. The fact that it's placed on the Internet, the fact that the information is available so that people can know who the sex offenders in their area are, that does not somehow become punishment. It's just, again, dissemination of information. It's a notice statute, in essence. I think it's also important to note that the vast majority of these types of offenses occur on Indian reservations and also to a much lesser extent in military because we're dealing with juvenile. But the vast majority occur on Indian reservations. The policy surely cannot be that if you're convicted in Great Falls, Montana, where it's state jurisdiction, you get on the website. But if you're convicted on the Indian reservation in federal jurisdiction, that somehow it becomes ex post facto and you don't get on the website. That argument doesn't seem to make sense. The folks who live on the Indian reservations certainly have just as much of a public policy right under this statute to know who the offenders in their neighborhood are as the people who live in the areas where state jurisdiction applies. And so if you look at the different states' jurisdictions, they have always publicized the names of juvenile offenders? They would have to under the SORNA Act. There is a sex offender registration in Montana, Your Honor. I can't give you all the details. Wouldn't the juvenile there in the same position would have the same argument if they were from a state where it was typically confidential? Wouldn't they just be in the same position as SE in terms of making the ex post facto argument? Yes, ma'am. They would have the same argument to make. But there are some states where it is not. Juvenile proceedings are not sealed. They're not confidential. And so we would now have a system that completely overrode the express intent of Congress, which is that we have a nationwide system that's uniform to alert the public. You wouldn't override the intent of Congress. You did say that this doesn't apply to acts that occurred before the time of the act. You would have a uniform system for the future. Well, I would respectfully disagree, Your Honor, because Congress has stated that they want certain juveniles to be on the registration so that the public is aware of their existence. And the Attorney General. They left it up to the Attorney General. Well, they left it up to the Attorney General. It wasn't exactly a ringing declaration. I'm sorry. I couldn't hear you. I said it wasn't exactly a ringing declaration. They left it up to the Attorney General. Well, they left it up to the Attorney General to see how far back it was going to apply. But the expressed purpose and intent at the very beginning of the SORNA statute is that they want to protect the public by giving the public the information they need to determine where these sex offenders live within their community so that the public can protect their own children and protect themselves through knowledge and through truthful information that is in the public arena. Let me just ask you something. Yes, sir. We haven't touched upon it. You know, in his reply brief, Mr. Gallagher makes a short argument about the non-delegation doctrine. And I know so you obviously haven't responded to it. But do you have anything to say about that? Have you thought about that at all? I have, Your Honor. I guess I would have a couple things to say. The first is that we would argue that he waived that issue because it wasn't brought up initially. I would also, if that is something that is of importance to the court, I would argue that or I would ask for permission to brief that before the court made a decision. Just a real quick reply is that we would simply find, I think there's only one district court that actually found it to be a non-delegation problem. That was out of Nebraska recently since we filed our briefs, although another district court in Nebraska said it wasn't a non-delegation problem. But there's only been two times since 1935, actually, there's never been a time when the Supreme Court found a non-delegation problem. There were two times in 1935, nothing since then. We believe that it's an intelligible principle, which is kind of the catchphrase of the court. They didn't determine anything other than how far back this reached, and we believe that that is clearly okay to do and not a problem of the non-delegation doctrine. But again, if the court wants more, I would request the opportunity to brief that issue. I guess the last thing I would bring up, I only have about three minutes left, but the last thing I would bring up is that both SORNA and the FJDA tell us that SORNA applies. I think that's important as well. In the Federal Juvenile Delinquency Act, there was an issue in the initial brief about whether notice needed to be given. But it's important to point out that the Federal Juvenile Delinquency Act itself says that as a mandatory condition of juvenile supervision, if somebody is required under SORNA to register, that they have to register. And we would just ask that this court follow the explicit language of Congress, that the texts of the two statutes do not conflict. It does not become punishment just because, in practice, district courts often sealed these proceedings when that was not explicitly required under the Act, and we do not believe that there's an ex post facto problem. Thank you for your time. Thank you, counsel. Your Honor, first of all, let me get back to my hyperbole. I didn't want the court to think that I was abandoning my client. We raised the ex post facto issue not only because it applies to all juveniles, but particularly with regard to S.E. Remember, when his conviction was in 2005, SORNA did not exist. There was no requirement under the new Condition 8 for him to register as a sex offender under SORNA. So that is unique to S.E. in this particular case. But we argue that it should not apply to any juvenile ever. Mr. Hosley, on behalf of the government, raised a number of issues, and he raised the Third Circuit case, and I believe he was referring to United States v. A.D., which is in the reply brief. I also mentioned United States v. Chacon and United States v. Eric B. In those particular cases, certainly it was true that they were talking about releasing the juvenile's information for a specific purpose. And, Your Honors, that's exactly my point here. I mean, the district court retained the jurisdiction to decide whether or not it was appropriate to give up this information. In other words, it was a case-by-case consideration of whether or not this was an appropriate circumstance to release the confidential juvenile records. In all three of those cases, that's what we're talking about. SORNA doesn't do that. There is no case-by-case revelation of why this particular information should be put in the public record. It's just put in the public record. But if the case-by-case authority has always been there, it considerably weakens the ex post facto argument, doesn't it? I don't think so, Your Honor. I don't think so, because that is the point. It's a case-by-case evaluation by the district judge, the judge who is closest to the juvenile, the one who knows the juvenile, knows the background of the case, knows how it will affect him and his community. That's not true in SORNA. It's just a conviction. No, no, no. Whether it's not true or not, I mean, the point is, you know, it's not punitive. Your Honor, I most respectfully, without the case-by-case analysis, it is punitive. They're making that confidential information available across the board, regardless of the individual's circumstances. Well, I didn't phrase my statement too well. What I'm trying to say is, you see, if the district judge always had the power on a case-by-case basis to decide on whether, you know, it should be disclosed to the trial public, those considerations were really non-punitive considerations. In other words, the decision to make it public is not something that goes to punishment at all. But the effect is. And that's why having the district judge case-by-case basis deciding. Well, I don't know if the effect is, because, you know, that's the point of the adult case. Exactly. The adult with the adult cases, and remember, we're talking about all those other constitutional protections that come with the adult conviction that are not available to the juvenile. That's why this is different than Smith v. Doe. That's why an adult conviction, the incidental effect, is so punitive for a juvenile. My time is up. Thank you very much for your time. Thank you, counsel. The case-by-case argument will be submitted. The court will take a brief, well, we'll take a recess until later in the morning while service v. International Brotherhood of Kings is canceled. Your Honor.
judges: Reinhardt, Tashima, McKeown